UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANDRE D. WILLIAMS          )
                                )
         Plaintiff,          )
                                )
        vs.                )       Case No.  4:05CV00661 ERW
                                )
ANGELA CHANDLER,         )
SANTIEGO HALLAZGO, and     )
CORRECTIVE MEDICAL SERVICES   )
                                )
        Defendants.       )

## MEMORANDUM  AND ORDER

This matter comes before the court upon Defendant's Motion for Summary Judgment [doc. #22].  Plaintiff is a prisoner at Medium Security Institution and is representing himself in this action.  He has filed this suit seeking damages pursuant to 42 U.S.C. § 1983 for violations of his right to medical care under the Eighth Amendment and for violations of his due process rights under the Fourteenth Amendment of the United States Constitution.  Defendants seek summary judgment in their favor on all claims in Plaintiff's complaint.  For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I.  Background[1]

Plaintiff Andre Williams is a prisoner at Medium Security Institution ("MSI").  He was incarcerated on October 3, 2004.  Plaintiff alleged he had been scheduled for surgery for bleeding hemorrhoids prior to his incarceration, with Dr. Behadursingh, a physician at St. Louis University

---

[1]  The facts presented below were provided by submissions from Plaintiff and Defendant and the Exhibits attached thereto.

1

Hospital (SLUH). He was evaluated by a non-defendant nurse on October 4, 2004. At that time, Plaintiff denied any medical problems, including bleeding or injuries that required medical attention.

On October 12, 2004, Plaintiff was evaluated by Defendant Angela Chandler, R.N. ("Defendant Chandler"), the Director of Nursing at MSI. Since 2002, he has been evaluated for complaints of vomiting blood and blood in his stool. Defendant Chandler works for Defendant Correctional Medical Services, a private entity licensed to provide health care to inmates at MSI. Defendant Chandler states in her notes that Plaintiff was observed in the medical unit for 20 minutes without vomiting. Defendant Chandler contacted a nurse at Dr. Bahadursingh's office advising her that Plaintiff had canceled appointments with Dr. Bahadursingh and had been diagnosed with hemorrhoids (*a mass of dilated veins in the area of the rectum*). Defendant Chandler sent a request to Dr. Bahadursingh's office for Plaintiff's medical records and referred him to Defendant Dr. Hallazgo, the Medical Director for MSI, for further evaluation and treatment.

On October 21, 2004, Plaintiff completed an "Informal Resolution Request" form that complained of a lack of medical attention and requested surgery for bleeding hemorrhoids. On October 22, 2004, Plaintiff submitted a "Health Services Request" form requesting treatment for bleeding hemorrhoids and what he suspected was a hernia of his left groin. He was seen by a nurse on October 25, 2004, who noted Plaintiff's complaints and demand to be taken to a hospital outside of the prison for surgery. Plaintiff was then scheduled to see Dr. Hallazgo on November 8, 2004, but canceled this appointment by completing a "Release of Responsibility" form. Plaintiff was called into the medical department later that day to discuss why he canceled his

appointment. Plaintiff stated that he did not want to pay the co-pay for the appointment. When he was told that he would not be charged, Plaintiff still refused treatment citing instructions from his lawyer not to do or say anything.

Plaintiff completed another Informal Resolution Request form on December 17, 2004, citing a failure to treat his hemorrhoids and possible hernia. He also completed another Health Services Request form recounting a fall he suffered when he got out of the shower that led to profuse bleeding from the rectum, an increase in the size of the lump near his right groin, and dizzy spells. In response, Plaintiff was seen by Defendant Dr. Hallazgo on December 28, 2004. At this time, Dr. Hallazgo also took Plaintiff's blood pressure and ordered a series of blood tests.

Plaintiff obtained a state court order on January 4, 2005, for transportation to see Dr. Bahadursingh at SLUH for a surgical consultation on January 7, 2005. The next day, January 5, 2005, Plaintiff refused treatment from the medical staff at MSI. In an event unrelated to his previous complaints, Plaintiff fell down some stairs in his dorm on January 6, 2005. He was seen by MSI medical staff and transported to Barnes-Jewish Hospital by the MSI Emergency team that arrived at the scene. Plaintiff was returned to the facility later that day in a wheelchair wearing a neck brace.

Notwithstanding his fall, Plaintiff was able to attend his surgical consultation with Dr. Bahadursingh at SLUH on January 7, 2005, under the state court order. Dr. Bahadursingh noted Plaintiff had a right inguinal hernia and was bleeding from the rectum. Dr. Bahadursingh ordered that a colonoscopy be performed on January 24, 2005, and noted that surgery for the hernia and any other findings would be scheduled after the colonoscopy results were available. Upon returning to MSI from Dr. Bahadursingh's office, Plaintiff was called to the medical department

where Defendant Alexander questioned him about his fall down the stairs on January 6, 2005. When Plaintiff was not responsive, Defendant Alexander removed his neck brace and took away the wheelchair.

On January 14, 2005, Plaintiff was again seen by Defendant Hallazgo regarding complaints of bleeding from the rectum and spitting up blood. Defendant Hallazgo, noting that Plaintiff had a small right hernia and a scheduled colonoscopy, ordered Plaintiff be placed in the Transitional Care Unit of the Criminal Justice Center ("CJC") for monitoring of his hematemesis (vomiting of blood). Between January 14, 2005 and January 24, 2005, Plaintiff was observed at the CJC with no hematemesis, but had some blood in his stool. Plaintiff had previously filed for a second state court order to be transferred to the CJC previously. This order was signed and sent to MSI on January 24, 2005, but Plaintiff had already been transferred.

Plaintiff was prepped for his scheduled colonoscopy on January 24, 2005. On the morning of the exam, Plaintiff's mother called to say she was going to meet her son at the hospital. Dr. Hallazgo was made aware of this fact and cancelled the test. Defendants have alleged this cancellation was due to security concerns. He was then transported back to MSI from the CJC.

After returning to MSI, Plaintiff filed two Health Services Request forms on January 24, 2005, and January 25, 2005, complaining of the same medical symptoms. In response to these forms, Dr. Hallazgo met with Plaintiff on February 3, 2005. Dr. Hallazgo noted that Plaintiff had no bleeding in the upper gastrointestinal (stomach and intestine) tract while at the CJC. The doctor also performed a digital rectal exam of Plaintiff and noted a small hemorrhoid with no signs of bleeding and a hernia on his right side. Plaintiff has disputed that no blood was present on the doctor's glove after the digital exam. Dr. Hallazgo determined that Plaintiff's bleeding was

caused by the hemorrhoids and, in his medical opinion, a colonoscopy was not medically necessary.

In response to Dr. Hallazgo's diagnosis, on February 18, 2005, Plaintiff obtained a third, signed, state court order for MSI to transport him to the office of Dr. Bahadursingh at SLUH for a colonoscopy, on February 22, 2005, and for the medical department at MSI to prepare him for the test with Golytely or a comparable substance the day before his exam. The court order was received by MSI on February 18, 2005. On February 21, 2005, an unsigned memorandum was sent from Robyn Drake (a nurse at CJC) to LaVerta Barnes (of Corrective Medical Services at MSI) regarding Plaintiff's medical condition. The memorandum recounts the observation of Plaintiff at the CJC, where he was recognized as an inmate who caused self-inflicted rectal bleeding and notes that it continues to be the medical opinion of the doctor at MSI that unless Plaintiff refrain from self-injury, further outside testing is not warranted. Plaintiff alleges that the February 18, 2005 state court order was not followed.

Plaintiff submitted Informal Resolution Requests on March 27, 2005, and April 4, 2005 complaining of MSI's failure to comply with the court order to send him to Dr. Bahadursingh's office for a colonoscopy and continued denial of care to him. He also submitted a Health Services Request on April 5, 2005 complaining of the same symptoms. Although he was scheduled for an evaluation on April 6, 2005, with Dr. Hallazgo, Plaintiff refused treatment. Plaintiff was again scheduled for an evaluation by Dr. Hallazgo on April 14, 2005, and again signed forms refusing treatment, citing a distrust of Dr. Hallazgo's diagnosis.

This pattern of Plaintiff formally requesting medical treatment from Dr. Bahadursingh at SLUH and refusing to meet with Dr. Hallazgo continued until the end of May, 2005. Plaintiff had

an appointment with Dr. Hallazgo on April 21, 2005, to re-evaluate his claims and receive another digital examination and further testing if necessary, but Plaintiff refused. Plaintiff formally requested medical treatment on April 26, 2005; May 3, 2005; May 7, 2005; and May 10, 2005 from Dr. Bahadursingh at SLUH. Each time Plaintiff requested treatment, he was scheduled an appointment with Dr. Hallazgo, but he formally refused to meet with him.

## II.  Standard of review

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if the evidence before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

"By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Hufsmith v. Weaver*, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (emphasis added by Supreme Court)). Material facts are those "that might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). Summary judgment will be denied due to a genuine issue of material fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Crumley*, 324 F.3d at 1006.

Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *Crumley*, 324 F.3d at 1006 (citing *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. *Anderson*, 477 U.S. at 250. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586.

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. *Crumley*, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. *Matsushita*, 475 U.S. at 587. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. Discussion

Plaintiff brings suit pursuant to 42 U.S.C. § 1983[2] claiming that Defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. In *Estelle v. Gamble*, the Supreme Court ruled that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted); see also *Wickham v. Dowd*, 914 F.2d 1111, 1119 (8th Cir. 1990). For this reason "[t]he government is obligated to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (quoting *Estelle*, 429 U.S. at 103). It is a violation of the Eighth Amendment to deny medical care for serious medical needs when the denial results in pain and suffering that serves no penological purpose. *Estelle*, 429 U.S. at 103. A serious medical need exists when a person "has been diagnosed by a physician as requiring treatment or [the need] is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

Specifically, in order to find an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. *Farmer v. Brennan*, 511

---

[2] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted). Second, the "prison official must have a sufficiently culpable state of mind." *Id.* (internal quotations omitted). "[T]hat [subjective] state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* Deliberate indifference exists when the prison official "knew of, yet disregarded, an excessive risk to his health." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997)). In order for a Plaintiff to succeed he "must evidence (1) he suffered from a serious medical condition, (2) defendant[] knew of the condition, and (3) defendant[] deliberately disregarded the condition." *Kitchen v. Miller*, 343 F. Supp. 2d 820, 823 (E.D. Mo. 2004).

The requirements for an Eighth Amendment claim can be satisfied by either the denial of access to medical care or the interference with proscribed treatment. Deliberate indifference can be present if a prison physician chooses "an easier and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). Similarly, cursory treatment of a serious medical condition may also constitute deliberate indifference. *Starbeck v. Linn County Jail*, 871 F.Supp. 1129, 1145 (N.D. Iowa 1994). However, just because the inmate's medical treatment may be considered "conservative," does not necessarily mean that the physician has acted with deliberate indifference. *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994). Similarly, "[m]ere negligence is not sufficient to support a cause of action[.]" *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 97 U.S. at 106. Treatment will only be considered inadequate if it is "grossly inappropriate or evidenced intentional maltreatment." *Dulany v.*

*Carnahan*, 132 F.3d 1234, 1241 (8th Cir. 1997).

Certain decisions are made using independent medical judgment. *See Estelle*, 97 U.S. at 107. Federal courts are reluctant to second guess treatment decisions made by competent physicians. *Bouchard v. Magnusson*, 715 F.Supp. 1146, 1149 (D. Me. 1989). "Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs." *Davis*, 992 F.2d at 153. Defendant's motion for summary judgment will be granted if Plaintiff fails to provide support for each essential element. *Celotex*, 477 U.S. at 322-23. Here, this Court finds that Plaintiff has failed to present evidence establishing a genuine issue of material fact that Defendants were deliberately indifferent with respect to Plaintiff's serious medical need.

### A. Serious Medical Need

In evaluating the objective component of a prisoner's Eighth Amendment claim, the Eighth Circuit has held a serious medical need arises when the injury "has been diagnosed by a physician as requiring treatment or is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos*, 73 F. 3d at 176. This Court finds sufficient evidence to conclude Plaintiff had a serious medical need. Two physicians diagnosed Plaintiff with symptoms and proscribed treatments. While Dr. Hallazgo did not find medical evidence for every symptom alleged by Plaintiff, he did find he was spitting up blood and sent him to CJC for sustained observation. In addition, Dr. Bahadursingh evaluated Plaintiff on January 4, 2005, and diagnosed him with a right inguinal hernia that required surgery, and scheduled a colonoscopy, that could reveal a need for further surgery. In the alternative, this Court finds that even a lay person would recognize bleeding from the rectum and spitting up blood as requiring a doctor's attention. These findings are consistent with other court rulings. *See Johnson v. Lockhart*, 941 F.2d 705 (8th Cir.

1991) (holding an inguinal hernia that required surgery constitutes a serious medical need); *Griffin v. DeRobertis*, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (concluding that while aches and sore throats may not constitute serious medical needs, becoming ill to the point of spitting up blood does).

A second line of cases in the Eighth Circuit have held that a Constitutional violation may be found by looking at the "objective seriousness of the depravation . . . by reference to the effect of delay in treatment." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). Moreover, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Beyerbach* , 49 F.3d at 1326 (8th Cir. 1995) (adopting this standard); *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (summary judgment properly entered for the defendants where the plaintiff failed to submit verifying medical evidence that delay in providing sunglasses further damaged his eye); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (no harm shown from delay in treatment); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (did not produce evidence that the delay in receiving medical care adversely affected the prisoner's prognosis).

Plaintiff has provided no evidence beyond his allegations to support a conclusion that any delay in treating his serious medical need supports a claim for relief. Plaintiff was evaluated several times for his complaints of spitting up blood and rectal bleeding by the medical staff at MSI. Plaintiff's repeated refusal to accept medical treatment from Dr. Hallazgo suggests Plaintiff's condition was stable over the course of time. Since Plaintiff refused to be evaluated,

there is no evidence other than Plaintiff's complaints that his serious medical need still existed after he began denying treatment. That Plaintiff suffered from a serious medical need is not in contention, however, his serious medical need was not the result of any delay in treatment by the Defendants.

### B. Deliberate Indifference

Plaintiff was unable to support his allegation that a delay in treatment resulted in a constitutional violation; similarly he is unable to show that Defendants acted with Deliberate indifference to satisfy the subjective prong of the Eighth Amendment. Plaintiff claims that Defendants Dr. Hallazgo, Nurse Chandler, and Correctional Medical Services were deliberately indifferent to his serious medical needs and this treatment was inadequate because (1) Defendants ignored his complaints and repeatedly denied him medical treatment and (2) Defendants' diagnosis of his condition did not coincide with Dr. Bahadursingh. Even considering the evidence in a light most favorable to Plaintiff, such evidence is insufficient to prove Defendants were deliberately indifferent under Eighth Circuit jurisprudence.

First, notwithstanding Plaintiff's protestations to the contrary, there is no evidence Defendants delayed or denied Plaintiff medical treatment. Plaintiff filed several Informal Resolution Requests and Health Services Requests with MSI, citing the need to be seen for rectal bleeding as well as other problems. Each time Plaintiff submitted a request he was given an appointment with a member of the CMS medical staff, usually with Dr. Hallazgo himself. Moreover, upon Plaintiff's first complaints of spitting up blood, Dr. Hallazgo ordered him to be transferred to the infirmary at the CJC for observation. Plaintiff stayed at that facility for over a week.

Plaintiff's failure to prove Defendant's deliberate indifference is supported by Plaintiff's refusal of medical evaluations and treatment made available to him. On several occasions, Plaintiff requested medical attention and was granted an appointment with Dr. Hallazgo, but formally refused to be seen by him. When pressed as to why he cancelled appointments with Dr. Hallazgo, Plaintiff did not state he was not treated during his previous appointments but he refused treatment because he had been mis-diagnosed by Dr. Hallazgo.

Plaintiff additionally argues that since Dr. Hallazgo's diagnosis and recommendations differed from the information and suggestions he received from Dr. Bahadursingh, his treatment amounted to deliberate indifference. Specifically Plaintiff argues that by refusing to perform or allow Dr. Bahadursingh to perform a colonoscopy and hernia surgery, he was treated with deliberate indifference by Defendants. Plaintiff's preference for the treatment recommendations of one doctor over another is not grounds for a finding of deliberate indifference. As stated above, it is well established that "federal courts are reluctant to second guess treatment decisions made by competent physicians." *Bouchard*, 715 F.Supp. at 1149. Moreover, the Eighth Circuit has held that "[d]isagreement with a medical judgment is not sufficient to state a claim for deliberate indifference." *Davis*, 992 F.2d at 153.

Dr. Hallazgo conducted numerous evaluations of the Plaintiff and conducted a rectal exam, finding no sign of blood, shortly after Plaintiff's return from CJC. In Dr. Hallazgo's medical opinion, the colonoscopy and hernia surgery were not medically necessary at that time. This diagnosis differed from Dr. Bahadursingh who recommended the opposite. Plaintiff claims that since he was not given the treatment prescribed by Dr. Bahadursingh, he was not given proper treatment, and thus treated with deliberate indifference. This is not the appropriate

standard. Plaintiff has not provided sufficient evidence to present a triable issue of fact on whether Defendants were deliberately indifferent by refusing to medically diagnose or treat Plaintiff.

## IV. CONCLUSION

Plaintiff failed to present evidence that creates a genuine issue of material fact as to whether any Defendant acted with deliberate indifference to plaintiff's serious medial needs. Therefore, this Court will grant Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claim. Additionally, the Court requests further briefing by the parties regarding Plaintiff's claim that Defendants' non-compliance with lawful court orders amounted to a violation of his due process rights under the Fourteenth Amendment of the United States Constitution.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #22] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the parties provide the court with further briefing regarding Plaintiff's claim of a due process violation under the Fourteenth Amendment. Defendants shall file a Motion for Summary Judgment relating to this issue no later than **October 20, 2006**.  A brief in opposition shall be filed within twenty (20) days and any reply briefs shall be filed within five (5) days thereafter.


Dated this 27th day of September, 2006.


E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE