UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE D. WILLIAMS, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV00661-ERW |
| | ) | |
| ANGELA CHANDLER, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Santiego Hallazago and Angela Chandler's Supplemental Motion for Summary Judgment [doc. #31].

## **I. PROCEDURAL HISTORY**

Plaintiff filed suit against Defendants seeking damages pursuant to 42 U.S.C. § 1983, for violations of his right to medical care under the Eighth Amendment, and for violations of his due process rights under the Fourteenth Amendment. Defendants' filed a Motion for Summary Judgment [doc. #22] on August 31, 2005 ("first summary judgment motion"); in that motion, Defendants' argued that Summary Judgment should be granted because Plaintiff had failed to provide evidence to support his allegations of a violation of the Eighth Amendment. Defendants' first summary judgment motion did not raise any arguments against Plaintiff's allegations of a due process violation under the Fourteenth Amendment. This Court granted Defendants' first summary judgment motion in part, but requested additional briefing on Plaintiff's due process allegations. Defendants filed a supplemental summary judgment motion [doc. #31] which is now fully briefed, and is the subject of this order.

1

## II. BACKGROUND FACTS

Plaintiff Andre Williams is a prisoner, and is incarcerated in a Missouri Medium Security Institution ("MSI"). He was incarcerated on October 3, 2004. Plaintiff alleged he had been scheduled for surgery for bleeding hemorrhoids prior to his incarceration. He was evaluated by a non-defendant nurse on October 4, 2004. At that time, Plaintiff denied any medical problems, including bleeding or injuries that required medical attention.

On October 12, 2004, Plaintiff was evaluated by Defendant Angela Chandler, R.N. ("Defendant Chandler"), the Director of Nursing at MSI since 2002, for complaints he was vomiting blood and had blood in his stool. Defendant Chandler works for Correctional Medical Services ("CMS"), a private entity licensed to provide health care to inmates at MSI.[1] Defendant Chandler sent a request to Dr. Bahadursingh's office for Plaintiff's medical records and referred him to Defendant Dr. Hullezgo, the Medical Director for MSI, for further evaluation and treatment. Following Plaintiffs submission of a number of Health Service Request forms, Plaintiff was eventually seen by Defendant Hullezgo on December 28, 2004. Defendant Hullezgo examined Plaintiff, took his blood pressure, and ordered a complete blood count.

Plaintiff obtained a state court order on January 4, 2005 to be transported to Dr. Bahadursingh at St. Louis University Hospital ("SLUH") for a surgical consultation on January 7, 2005. The next day, January 5, 2005, Plaintiff refused treatment from the medical staff at MSI. In an event unrelated to his previous complaints, Plaintiff fell down some stairs in his dorm on January 6, 2005. He was seen by MSI medical staff and transported to Barnes-Jewish Hospital by

---

[1]CMS was dismissed as a Defendant in this case in this Court's May 3, 2005 order, and is no longer a party to this action.

the Emergency team that arrived at the scene. Plaintiff was returned to the facility later that day in a wheelchair and wearing a neck brace.

Despite his fall, Plaintiff was able to attend his surgical consultation with Dr. Bahadursingh at SLUH on January 7, 2005, under the state court order. Dr. Bahadursingh noted Plaintiff had a right inguinal hernia and was bleeding from the rectum. Dr. Bahadursingh ordered that a colonoscopy be performed on January 24, 2005 and noted that surgery for the hernia and any other findings would be scheduled after the colonoscopy results were available.

On January 14, 2005, Plaintiff was again seen by Defendant Hullezgo regarding complaints of bleeding from the rectum and spitting up blood. Defendant Hullezgo, noting that Plaintiff had a small right hernia and a scheduled colonoscopy, ordered Plaintiff be placed in the Transitional Care Unit of the Criminal Justice Center ("CJC") to monitor his hematemesis, the vomiting of blood. Between January 14, 2005 and January 24, 2005, Plaintiff was observed at the CJC with no hematemesis and some blood in his stool. Plaintiff had filed for a second state court order to be transferred to the CJC previously. This order was signed and sent to MSI on January 24, 2005, however, the order was moot, as Plaintiff had been transferred to CJC on January 14, 2005.

Plaintiff was prepped for his scheduled colonoscopy on January 24, 2005. On the morning of the exam, Plaintiff's mother called to say she was going to meet her son at the hospital. Defendant Hullezgo was made aware of this fact and cancelled the test. Defendants have alleged this cancellation was due to security concerns. He was then transported back to MSI from the CJC.

After returning to MSI, Plaintiff filed two Health Services Request forms on January 24, 2005 and January 25, 2005 complaining of the same symptoms. In response to these forms,

Defendant Hullezgo met with Plaintiff on February 3, 2005. Defendant Hullezgo noted that Plaintiff had no bleeding in the upper gastrointestinal tract while at the CJC. Defendant Hullezgo determined that Plaintiff's bleeding was caused by the hemorrhoids and, in his medical opinion, a colonoscopy was unnecessary.

In response to Defendant Hullezgo's diagnosis, on February 18, 2005, Plaintiff obtained a third, signed, state court order for MSI to transport Plaintiff to the office of Dr. Bahadursingh at SLUH for a colonoscopy on February 22, 2005, and for the medical department at MSI to prepare him for the test with Golytely or a comparable substance the day before his exam. The court order was received by MSI on February 18, 2005. On February 21, 2005, an unsigned memorandum was sent from Robyn Drake, a nurse at CJC, to LaVerta Barnes, a representative of Corrective Medical Services at MSI, regarding Plaintiff's medical condition. The memorandum recounts the observation of Plaintiff at the CJC, where he was recognized as an inmate who caused self-inflicted rectal bleeding and notes that it continues to be the medical opinion of the doctor at MSI that Plaintiff refrain from self-injury and that further outside testing is not warranted. Plaintiff alleges that the February 18, 2005 state court order was not followed.

Plaintiff submitted Informal Resolution Requests on March 27, 2005, and April 4, 2005, complaining of MSI's failure to comply with the court order to send him to Dr. Bahadursingh's office for a colonoscopy and his continued denial of care. He also submitted a Health Services Request on April 5, 2005 complaining of the same symptoms. Although he was scheduled for an evaluation on April 6, 2005 with Defendant Hullezgo, Plaintiff refused treatment. Plaintiff was again scheduled for an evaluation by Defendant Hullezgo on April 14, 2005, and again signed forms refusing treatment, citing a distrust of Defendant Hullezgo's diagnosis.

4

This pattern of Plaintiff formally requesting medical treatment from Dr. Bahadursingh at SLUH and refusing to meet with Defendant Hullezgo continued until the end of May, 2005. Plaintiff had an appointment with Defendant Hullezgo on April 21, 2005 to re-evaluate Plaintiff's claims and conduct another digital examination and further testing if necessary, but Plaintiff refused. Plaintiff formally requested medical treatment on April 26, 2005, May 3, 2005, May 7, 2005, and May 10, 2005 from Dr. Bahadursingh at SLUH. Each time Plaintiff requested treatment, he was scheduled an appointment with Defendant Hullezgo, but he formally refused to meet with him.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element

essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

Plaintiff asserts that Defendants failure to comply with a state court order violated his Fourteenth Amendment right to due process of law. There was no compliance with the third court order that was issued on February 18, 2005, and is the subject of the pending motion. The

order required MSI to transport Plaintiff to Dr. Bahadursingh's Office for a colonoscopy. The question for this Court to determine is whether the failure of Defendants to comply with the state court order can constitute a violation of the due process clause of the Fourteenth Amendment to the United States Constitution. This question must be addressed in the context of qualified immunity. The doctrine of qualified immunity can generally be relied upon by prison officials to protect them from liability for civil damages. *Slone v. Herman*, 983 F.2d 107, 109 (8th Cir. 1993). In order for prison officials to lose their immunity, "their conduct must violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he first step in our analysis must be to determine whether [the plaintiff] had a clearly established statutory or constitutional right." *Slone*, 983 F.3d at 109.

The Due Process Clause states "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . .." U.S. Const. Amend. XIV § 1. "Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989). The Fourteenth Amendment does not protect against the actions of private actors. *Id.* The Eighth Circuit has specifically held that "violations of state laws, state-agency regulations, and more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone." *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995). However, the Eighth Circuit also notes that "constitutional significance may attach to certain interests created by state law." *Id.*

It is important to note the difference between a due process violation and a violation of state law.

> If a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist. This is not at all the same thing as saying that the federal Constitution guarantees me all rights created or conferred upon me by state law. Such a doctrine would turn every state-law violation into a substantive-due-process claim, a result that would obliterate completely the distinction between state law and the federal Constitution.

*Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993). The Eighth Circuit specifically recognizes that "[m]any important rights and duties are created by state law entirely without regard to the federal Constitution." *Id.* at 329. Although the court in *Bagley*, does not specifically address a state court order, it does state that "what is true of state statutory law is equally true of state decisional law. . .. State law, whether statutory or decisional, is not the equivalent of the federal constitution." *Id.*

The language used by the Eighth Circuit makes it clear that the violation of a state law, a state court decision, or a state court order, is not equivalent to a due process violation. However, in certain circumstances, the Eighth Circuit has recognized a due process violation as a result of the failure to comply with a state court order. In *Slone v. Herman*, the court held that the failure to comply with a state court order requiring the release of a prisoner, constituted a deprivation of the prisoner's liberty interest in being free, and therefore was a violation of the due process clause of the constitution. 983 F.2d 107, 110 (8th Cir. 1993) ("We conclude that when Judge Ely's order suspending Slone's sentence became final and nonappealable, the state lost its lawful authority to hold Slone. Therefore, any continued detention unlawfully deprived Slone of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment."). The Eighth Circuit then addressed whether the

8

defendants actions in *Slone* were objectively reasonable, if so, then they are immune from suit under the doctrine of qualified immunity. *Id.* ("[W]e must now look to the objective reasonableness of defendants' actions in depriving Slone of this right."). In another Eighth Circuit opinion the court held that the failure to return a prisoner to Level IV, in accordance with a state court order, constituted a violation of the plaintiff's liberty interest without due process of law. *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir. 1993). In both cases, "the defendants were state officials who had refused to obey an unstayed state court order that *conferred a liberty interest* upon the plaintiff, a state prisoner." *Id.* (emphasis added).

The cases cited above cannot be read to stand for the general proposition that the failure to follow a state court order results in a Fourteenth Amendment due process violation. Both cases specifically found that the state court order conferred a liberty interest; this Court must look at the specific state court order at issue, to determine whether a liberty interest was conferred. In the case at bar, the Defendants failed to follow a court order which required the Plaintiff to be transported to Dr. Bahadursingh's office. This is factually distinguishable, as Plaintiff does not have a liberty interest in being transported to a private doctor outside of the Missouri Correctional Facility. The Supreme Court has been very specific in the limits that exist on the constitutional rights of prisoners. *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (Internal citations omitted)).

The Supreme Court has recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which. . . imposes atypical and significant hardship on

9

the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484-485. The general rule articulated above is that the failure to abide by the state court order is not automatically a constitutional violation. *Ebmeier*, 70 F.3d at 1013. As analyzed in this Court's prior order, although the government is obligated to provide medical care for those who are incarcerated, there was insufficient evidence that Defendants in this case acted with deliberate indifference to the Plaintiff's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). Furthermore, there is no evidence that the Defendants imposed a hardship on the Plaintiff that is atypical of ordinary prison life. *Sandin*, 515 U.S. at 484. Plaintiff repeatedly requested medical attention, and was repeatedly granted the opportunity to meet with Defendant Hullezgo; each time Plaintiff refused treatment. The fact that he was not permitted to see Dr. Bahadursingh is not contrary to ordinary prison life; a prisoner does not ordinarily get to chose their medical care. Although the Plaintiff had the opportunity to seek redress in state court, the failure of the named Defendants to follow the state court's order, did not result in a violation of Plaintiff's due process rights. There is no evidence that Plaintiff was unable to return to state court. Not every violation of a state court's order will result in a denial of constitutional rights. *Bagley*, 5 F.3d at 328. Since there is no denial to Plaintiff of a constitutional right, there is no basis for a due process claim. It is unnecessary to address Defendants' argument that they are not officials for purposes of § 1983, as the first step in the qualified immunity doctrine is not satisfied. Defendants' Supplemental Summary Judgment Motion is Granted.

## V. CONCLUSION

The Court notes that Plaintiff's response to Defendants' Supplemental Motion for Summary Judgment appears to request reconsideration of this Court's earlier ruling on Plaintiff's Eighth Amendment claim. This Court has reviewed its previous Summary Judgment order, and

will not reconsider its findings on the question of deliberate indifference under the Eighth Amendment. Plaintiff has failed to present sufficient evidence to support a cause of action under the Fourteenth Amendment. Although it should be the practice of state officials, or those acting on behalf of the state, to abide by state court orders, the law is clear that the failure to follow a state court order alone is insufficient to create a constitutional violation. Furthermore, there is no constitutional right to private medical care protected under the Fourteenth Amendment. Accordingly,

**IT IS HEREBY ORDERED** that Defendants Santiego Hullezgo and Angela Chandler's Supplemental Motion for Summary Judgment [doc. #31] is **GRANTED**.

Dated this 2nd Day of May, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE